All rise, young men and women of the 4th and 5th Division is now in session. The Honorable Justice Marighelle Minkfa is presiding. Have a seat, please. We were told everybody's ready. Is everybody ready? Is there someone to call the case? I can call the case. In re D.F. 124-1566. And our door is open. And our door is open. Do you need to start the recording? Who starts the recording? This is what happens when we're just a little early.  All right. There are two preliminary matters that I wanted to raise before we start argument. One is a motion that was, two motions that were filed by the Office of the Public Guardian. Who is the representative of the Public Guardian? Would you approach the podium, please, and state your name for the record? Carrie Fong, Assistant Public Guardian. Okay. On the first one, I guess my question is, what in the world does this have to do with the case? What do we care what's happening in the trial court relative to visits? It was solely to inform this court when something has changed. The August 2024 order vesting limited jurisdiction to the trial court was specifically about the unsupervised day visits, the motion, and then the subsequent hearing. And so this was a new development in relationship to that. Okay. Does anybody want to respond to this motion? I mean, I don't see it's an emergency, and honestly, I don't view it as relevant. That's my view. The whole point here is we're not supervising this case. This case is not in its current status before us. So, you know. On your second motion, your motion to file a status report, are you asking us to enter an order revesting the trial court with some jurisdiction that he views himself as not having? Are you asking for that? What are you asking for? Well, Your Honor, at this point, because the trial court has specifically said it's just entering and continuing the motion to January. And at that point, they were counting the 35 days from the time that the 24-0430, that the mandate would come out. So they set it for January. He's viewing himself as not having jurisdiction to do anything. Correct. Do you want us to issue an order similar to the order that we issued on the mother's motion for visits, saying, look, you have jurisdiction. Are you requesting that? If it will help the trial court move this case along and make these decisions, yes. Okay. So you are asking for that? We didn't initially in the motion or in the status report solely because there was a continuation of the case. But because Your Honor is now asking, yes. Does anybody have any objection to that? No. Okay. We'll issue that order today. Thank you, Your Honor. The second preliminary matter is how does the state and the Office of the Public Guardian want to divide their time? There's 20 minutes aside. The state will be, I'm sorry, adopting the Public Guardian's argument, but we would like to reserve two minutes of time. Okay. So you would just comment at the end in case anything. Yeah, this is just a small disagreement that we're having with some language. Okay.  All right. Now, just to remind everybody in case we forgot a couple of things, there will be 20 minutes each side in addition to the appellant, which is the mother has an additional five minutes in rebuttal. You do not need to reserve any time for rebuttal. Second of all, just to remind you all to keep your voices up. This microphone records, we hope, but it doesn't amplify. So with that, whenever the appellant is ready, please approach the bench. May it please the Court. Good morning. My name is Brittany Barclay, and I'm from the Office of the Public Defender. We represent Shaniqua, David's mother. When we first filed our petition for leave to appeal, we thought, naively, that the state and Public Guardian might join us in our request to ask this Court to clarify that trial courts retain jurisdiction to enter orders related to visitation, permanency, and reunification on appeal of adjudication or the original disposition as pending. We thought that the other parties might join us in that request because the policy considerations are so compelling and because the statutory scheme of the Juvenile Court Act obviously emphasizes achieving speedy permanency for children. In fact, our state Supreme Court quoted the Public Guardian in In re Dea when it said that delay is antithetical to the purpose and policy of the Juvenile Court Act. Unfortunately, that admonition has consistently gone ignored in this case. Not only did it take 435 days for an adjudication to happen on David's case, once David and his siblings were adjudicated, abused, and neglected, the trial court froze any further progress on David's case. And the only explanation? Well, the trial court froze that progress because David's mother exercised her right to appeal those findings. Do you know, I don't know how long you've been in juvenile court, but does this happen a lot? Because I was there and I don't recall this being a practice during the time that I was there. I first began in juvenile court in 2018, and this is a regular practice that is occurring in the trial courts by, I would say, at least half the judges in this district. So half the judges approximately, and I understand you're reporting anecdotally. Some judges don't agree with this judge that they lose jurisdiction to enter orders, but there's a sizable number of judges that do. A sizable number of judges definitely do. And in this case, the only explanation for why the trial court claimed that David's case was up for nothing, as you put it, despite that date being selected six months in advance for David's permanency hearing, and despite David's mother filing a motion for unsupervised day visits, is that the court was applying an all-or-nothing rule of jurisdiction, and that is simply a misunderstanding of Illinois law. In People v. Auschholz, the second district explicitly stated that trial court jurisdiction is not an all-or-nothing proposition. The correct rule is what we call the Dunson-Minn rule in our briefs, that the trial courts only deprive the jurisdiction to enter orders that would prevent this court's review by changing the actual judgment on appeal. And an example of that occurred in the In Re NL case, where the trial court improperly allowed the state to supplement the appellate record with ICWA notices, and the first issue on appeal, well, addressed in the appellant's brief, was whether the state had properly notified tribes under ICWA. This was not at all the situation in David's case. The order sought by Shonequa, an order allowing her to have unsupervised time with her son, and in a permanency hearing order, would have done nothing to affect this court's review of the findings at adjudication or disposition. Let me ask you, and I don't have the benefit of Justice McVeigh's experience in juvenile court. It's not too late. Oh, it is. In terms of, isn't there the risk that there's some overlap? You know, one of the reasons why we have this very practical rule is, and this is something that we experienced in the first quarter of this year with the pretrial fairness act, is, granted, it's different, because it actually does allow the circuit court to continue to revisit an issue that is pending on appeal. And we have this unfortunate situation where, in a number of cases, we either ruled or were about to rule, only to learn that our ruling was mooted because the trial court had revisited the issue and changed its determination. Isn't there a similar risk here that in waiting, and this is a question I'm going to ask your friends on the other side as well, in waiting into this issue of visitation, aren't there facts that would necessarily be implicated in the judgment that's up on appeal? Well, the trial court can definitely consider the findings that are on appeal when making the determination of whether unsupervised statements are appropriate or what permanency goal it should select. And in this case, Shaniqua was never asking the judge to disregard those findings. And when the motion did actually happen for unsupervised day visits, the judge took judicial notice of those findings. So the question is, though, even if an issue does become moot, I think that, well, in terms of visitation, I don't think visitation is ever going to cause mootness on any of the appellate issues of whether the findings at adjudication were correct or the findings at disposition on that date and time were correct. So I don't see any situation that entering an order of scanning visitation could cause mootness. And the judge is allowed to take into consideration his findings of abuse and neglect when entering the later order. And the real question is, does the later order affect this court's review of the findings on appeal? And it doesn't in this situation. In the cases where mootness does become an issue, I would just note that mootness is not jurisdiction. So a trial court still has the jurisdiction to enter the order, which could cause mootness in the appellate court. And in these types of cases, even though it might be frustrating to brief issues that then become moot immediately after in the appellate court, the paramount concern of the Juvenile Court Act is not the convenience of the parties and it's not judicial economy. It is the best interest of the child. But just to push back on that for a second, let's say, for example, the trial court returns a child home while the appeal is pending. The parent still has an interest in reviewing the finding of abuse or neglect, even though they have their child returned to them. So the issues before us have not become moot by the fact that the trial court has returned the child home. Right, exactly. I think that it's actually going to be quite rare that a trial court's later order does cause mootness in the issues on appeal because mainly the parents are appealing the findings of adjudication, which, yeah, if the child is returned home to them, that will do nothing to affect this court's review of the actual findings of abuse and neglect. Now, the state and the public guardian have seemed to conflate mootness with jurisdiction and they've also reversed the correct inquiry. Their focus seems to be on whether this appellate court's future mandate could void a trial court's later orders or whether the trial court's later orders could cause mootness of the issues on appeal. But neither of those are jurisdiction, and the public guardian's claim seems to be that... Well, mootness is a justiciability question, which is the first cousin of jurisdiction, right? Well, I think that the trial court retains jurisdiction. Mootness is why we're missing standing. I think the trial court retains jurisdiction to enter the later order, even if there is the possibility that it might cause mootness of the issue on appeal. And the cases that we cite to in our brief, they're similar to Juvenile Court Act cases because they do involve proceedings that continue on after the final appealable order. And those cases show us that the trial courts have jurisdiction to enter the later order, even when the later order can potentially cause mootness of the appeal, and even though the later order is related to the issue on appeal. So we have, you know, the situation where a trial court can modify child support. And of course, that might cause mootness of the issue on appeal of the original child support order. And in People v. Auschwitz, it shows we have jurisdiction to hold the restoration of fitness hearing, even though, yes, that might cause mootness of the issue of the defendant being unfit in the first place. And the restoration of detention, I'm sorry, the detention review hearings, we have to hold those subsequent, even though it's going to be related to the initial finding that detention was necessary, and it can very well cause mootness. But the trial court still has jurisdiction to enter those orders and has an obligation to hold those subsequent hearings. I'm going to push back again. I don't think that either the state or the Office of the Public Guardian confused the issues. They made two separate arguments. First, they said, don't even decide this appeal because it's moot. And it is almost moot because our decision in the underlying adjudication has come down and the mandate will issue, and so now, or as of January, there's plenty of jurisdiction in the trial court. That's their mootness argument. But they're saying if you do reach the merits, the trial court doesn't have jurisdiction because it's on the appellate court and they can't share jurisdiction. I think they've made those arguments pretty succinctly and separately, and I don't think it's going to be helpful to conflate them. I think they're separate arguments. I'd be happy to hear you addressing the one of them, but I don't think they're the same argument. Well, our position is that the issue is not moot. I think that the mootness argument that they've claimed is regarding unsupervised day visits, and although unsupervised day visits have been granted, there still has not been a permanency hearing, and I think the public interest exception to mootness quite clearly applies in this situation. So essentially, it is moot, but the exception applies is your argument. Well, as to unsupervised day visits, if that's moot, then yes, the public interest exception applies, but we also addressed the trial court's refusal to hold a permanency hearing, and under the timelines under the Juvenile Court Act, David should have had a minimum of three permanency hearings by now. He's been in foster care for over two years, but he's only had one. And according to the public guardian's recent and standard report to the court, the trial court is still refusing to hold that permanency hearing, and even if the mandate issues on the other case, we still now have this appeal that's pending. So I don't think it's fair to say that that's even going to become moot. And so we do need clarification for David and for all children under this Act, that the trial courts have continuing jurisdiction, and not only that they have continuing jurisdiction, but they actually have an obligation under the Act to continue holding these hearings under the timeline set out in the Juvenile Court Act. And the whole purpose of the Juvenile Court Act is to achieve speedy permanency for children, and there are strict deadlines. A permanency hearing does have to occur at a minimum of every six months, and even though these child protection appeals are expedited, they typically, the mandate, when an issue is fully briefed, does not come back within that timeframe. So are you asking us to carve out, I guess, an exception or jurisdiction solely for the permanency hearing, that the circuit court can continue having permanency hearings, or are you asking us to give the circuit court broad jurisdiction to decide any issue that is not related to that specific appeal, which could possibly continue to open us up to many more appeals coming from the child protection division? Yes, Justice, I'm asking that this Court clarify that child protection courts have continuing jurisdiction in these cases to enter orders related to visitation, permanency, and reunification, but also it should be really up to the trial court to determine whether the, if anything is sought outside of those three areas, it should be up to the trial court to determine whether the order being sought is going to affect the issue on appeal. These trial courts are intimately familiar with the details of these cases. These child protection cases are very fluid. Things are constantly changing, as shown by the Public Guardian's Instander Report. We need to have a forum available to address these situations immediately in the trial court if needed. And because the trial court is in a fact-finding position, they can ask the parties, okay, what order are you asking? What are the issues on appeal? And the trial court can determine if what's being sought is going to affect the appellate court's review. Let's talk about that for a minute. So the issues on appeal, adjudication and dispo, they're appealed together, correct? Yes, correct. And the appealable order is the dispositional order, which sweeps in the adjudicatory order. Yes. Correct. And adjudication is, as I've always understood it, but tell me if I'm wrong, that at the time of temporary custody, at the time the complaint was filed, there was abuse or neglect. Yes, that's my understanding. Okay. And disposition is, at the time of the dispositional order, these children should not be returned home. They should be made wards of the court at this moment. Correct. And that's it, right? I mean, that's all, generally speaking, that's up on appeal. Right. So under the Act, the proceedings should then continue to achieve speedy permanency, preferably in a child's home with their parents, if that is in their best interest to do so. So, yes, the issues on appeal are that day in time, was the parent fit, willing, and able to care for their child? And even if we are asking for return home at a later day, it is going to be based on different circumstances, like a child support award. It's going to be based on services the parents have now completed. So there are different issues, and I think that it is going to be so rare when what we are requesting would actually affect the issue that's on appeal. And I would just note, too, the Petrimo case that we cited, too, talks about the reason of, you know, why the jurisdiction needs to be continuing these types of cases. And it's the length of the appellate process and the need for parties to have a form of relief available. And that cannot be more true than in juvenile court act cases. Now, let me ask you a question for my own edification, and that is, during the appeal process, are services and resources still available to the parent during that period of time? Yes, so the parents will continue to be provided with services, and DCFS still has to make reasonable efforts during that time, which is also why we need regular court review of these cases to determine whether the services being provided are necessary and appropriate, and whether DCFS is actually providing reasonable efforts to help achieve the permanency goal. We cannot just halt this case just because the appeal is pending and might someday reverse the findings. And currently, does the nine-month progress period continue during the appeal as well? Yes, that is not told for a parent. A parent's parental rights could potentially be terminated at a later date, under Grounds M of the Adoption Act, because if the parent was not making progress during that nine-month period following adjudication. And that will start from adjudication, regardless of if the appeal is filed or not, which is more of a reason of why we need to have this continuing jurisdiction. So the parent wouldn't be successful in saying, but it was on appeal, there were no court dates, nothing was happening because we were awaiting appeal. Right, and exactly. And the parent is admonished, yes, they have a right to appeal these findings, and they're also admonished that they need to correct the conditions at the same time. So we have to work on both paths. And I just want to talk about the state and public guardian point to the option of motions to revest limited jurisdiction. And those motions are a solution in search of a problem, because trial courts have jurisdiction to enter these later orders. And so requiring this motion is superfluous. Is it burdensome? It is burdensome. The public guardian was only able to find six cases where these motions were filed in 12 years. And my guess is they've represented thousands of children whose cases were on appeal during that time frame, and they are the party that represents the best interest of these children. And the fact that they're only able to file, I think they filed four of those motions. So they're not a real remedy. The parents in these cases are represented by our office, or court appointed counsel who are referred to as bar attorneys, many of which have never practiced in the appellate court. They don't know about these motions, and I don't think that they could even look at that Supreme Court rule and think that this is what they're supposed to do because it contains no language about the motions, no timelines of when these motions need to be filed, of when the other parties need to respond by, when the appellate court needs to rule on it. And the example in the public guardians and stander motion shows that even though this appellate court granted limited jurisdiction to the court to hear Shameika's motion for unsupervised, well now we have this issue where the public guardian wants their motion to be heard, but the limited order from this court didn't specify that. So then we have to go back to the appellate court. It does not make sense. The trial court is in a better position to be able to hear these motions, and they can make the determination of whether what's being sought is actually going to affect the judgment on appeal. But the correct form should not be the appellate court. And so we are asking today, you know, well, this case is about David, and he did deserve to have a motion for unsupervised day visits heard back in July when his mother asked to go forward on that motion and when his attorney and guardian, Ed Lightham, asked the trial court to go forward on that motion. And although that motion has been granted, he does deserve regular court review on his case at a minimum of every six months. And David's not alone. Everybody under this Act deserves both appellate review of the adjudicatory findings or the initial disposition finding, and also the ability to reunify with their children as soon as it is in their child's best interest to do so. So we're asking this court clarify trial courts have continuing jurisdiction, and they actually have a responsibility under the Act to continue holding these hearings. Reunify or modify. Reunify or modify. Or terminate. Yes, so if the permanency goal has been achieved, then yes, absolutely. The trial court should be able to modify that dispositional order and say, yes, today the parents are fit, willing, and able. Or terminate. Wouldn't that fall? I think that that is going to be a situation that probably is not going to come up because of the time periods under the Act. Typically, DCFS is required to provide services to parents for a period of nine months before they could allege grounds M under the adoption act. Not terminate parental rights, but terminate the visitation. We had an emergency motion regarding an incident that occurred in this case, and perhaps the unsupervised parenting time might need to be modified towards terminating the unsupervised parenting time. Right. So, yes, I'm not conceding the allegations in this case. Hopefully they're not true. But if they are true, yes, there needs to be a forum where motions can be filed, emergency motions can be filed, and that the trial court can make the decisions that are in the best interest of the child. On either side. Yes. Okay. Thank you. Thank you.  Can you state your name again for the record? Good morning. May it please the Court. I'm Carrie Fong, Assistant Public Guardian, on behalf of 8-year-old David. His mother, Ms. B, whooped him and left linear and loop marks on him two years ago when he was only six. Today, David asked this court to make three findings regarding the trial court's jurisdiction when an appeal of the adjudication and dispositional orders are pending. First, the trial court did not abuse its discretion in declining to hold a hearing in July of 2024. Okay, I'll stop you right there. How in the world is jurisdiction an abuse of discretion issue? Is it not a purely legal issue that we decide to know about? So, in Kuehl v. Kuehl. Yes, and there the court had jurisdiction and was deciding whether to exercise their jurisdiction. But your position here is that the trial court has no jurisdiction. No, what we're saying is that the trial court did not abuse its discretion. But I'm saying to you this is a legal question. Does the court have jurisdiction or not? Does the trial court have continuing jurisdiction while this appeal is pending? That has to be a legal question. And we turn to look at the statutory provisions of the Juvenile Court Act and also the Illinois Supreme Court rules, which for governing dispositional hearings and orders and also for permanency hearings is sections 2-22, 2-23, and 2-28 of the Juvenile Court Act. And in all three sections, there is no language in there that there is a continuing jurisdiction for the trial court while an appeal is pending. And which is very different from when you look at the statutes regarding the Illinois Parentage Act, the Illinois Marriage and Dissolution of Marriage Act, and the Uniform Child Custody Jurisdiction and Enforcement Act in which in all three of those statutes it specifically says that there is continuing jurisdiction, that the court has jurisdiction to modify, and it has exclusive continuing jurisdiction. Well, I believe that the Juvenile Court Act says unless the disposition expressly so provides, it does not operate to close proceedings on the pending petition, but is subject to modification not inconsistent with section 228 until final closing and discharge of the proceedings under section 231. So I believe the statutory language in the Juvenile Court Act is similar, but I will also say that the statutory language argument is a legal argument, first of all, so we're not talking about abuse of discretion. And second of all, I don't believe you made it in your brief, but I will allow you with those, well, caveats to proceed. It's not in your brief. I don't know exactly what you're saying, but if you're saying that the continuing jurisdiction that we recognize in child custody cases, in divorce proceedings, or under the Pretrial Fairness Act, on whether people are allowed out pretrial, that there's some statutory differences, I would need to see those in writing and they're not in your briefs. Your Honor, I did address it in my brief, albeit not so eloquently. If you're talking about a difference in statutory language, I'd like to know where it is in your brief. Okay. Starting on page 36. And on page 37, at the top of the page, I specifically state that there is no provision in the Juvenile Court Act. And what about 220, the language that I just read you? Doesn't that talk about a continuing change in disposition? So with regards to section 2-28, which refers to the provision in court review, those hearings, the statute requires those hearings to be held every six months. But what's interesting in the statute is that it says that the permanency hearing may not be delayed in anticipation of a report from an agency, but it is silent on the language on proceeding while there is an appeal pending. And in Ray Curtis B., the Illinois Supreme Court specifically struck down the provision, the statutory provision under 220-28 that allows permanency orders to be appealable. And so permanency orders are appealable only by permission under 306-85. And the language in the Illinois Supreme Court Rule 306-85 does not specify that a trial court has which is unlike Illinois Supreme Court Rule 604-H-6, which governs pretrial detention hearings, is specifically It's a different part from the rules. Specific rules or specific statutory provision. The basic rule is, the general rule, that filing a notice of appeal divests the trial court of jurisdiction. But it's of jurisdiction over the order that is the subject of the notice of appeal. It's quite common that there are ancillary proceedings, even in an area that I am familiar with, which would be an appeal from a civil judgment. There are sometimes attorney's fees disputes that continue on in the trial court. There are certainly proceedings related to seeking a stay of the enforcement of the judgment. The enforcement of the judgment, of course, continues, the absence of a stay, and the filing of the supersedis bond. And even after a bond is filed, the trial court still has jurisdiction to modify the terms of that supersedis bond, depending upon the creditworthiness of the judgment creditor and that sort of thing. So the general rule, even the general rule recognizes exceptions. And why wouldn't the exceptions come into play here, where we're talking about a situation where it just, while it's an appealable order, it is almost in the nature of interlocutory, because there are necessarily, this case still is going on in the trial court. And our request to this court is that there is a procedure in place to help move the case along, which is to file the motion to vest limited jurisdiction. And in that motion, this court, because ultimately this court is the final arbitrator of jurisdiction. The reviewing court has that determination. And the cases show that. In Sawyer, in NL, you know, this court had to decide jurisdiction. So ultimately, even though the trial court might say, I believe I have jurisdiction because this issue is independent, collateral to, or supplemental to the issue on appeal, this court still reviews that. Why wouldn't the trial court be in the better position to make that judgment in the first instance? Well, then if they're wrong, you can appeal that. Well, as Justice McFarland pointed out, we have 12 justices in the Cook County Child Protection System. And I don't know how many in the rest of the state of Illinois. But, you know, that means we have 12 differing opinions. And the situation here, we have a judge that said, I have no jurisdiction whatsoever to hear a case. We might have another judge that might say, I have jurisdiction no matter what to hear a case. And somewhere in between there, based on the individual facts of each case, I'm sure is where the answer lies. Well, how can that be good that one judge says yes and another judge says no? How is that good for anybody? And that's why we're asking for the clarification, Your Honor. No, you're asking us to dismiss this appeal. It's moot is what you're really asking for. But let's assume we're past that. Don't we need a definitive rule? And shouldn't it come from us? And isn't it the legal rule? So you're with agreement with me so far. And now let's disagree about what that rule should be. How is it in the best interest of children that trial courts not have jurisdiction to increase or decrease visitation, to have a permanency hearing, to determine whether the agency is making reasonable efforts to do all the things that are necessary for permanency of children, either to return them home or to terminate rights? I mean, how is it not in their best interest for the trial courts to continue being able to do something on these cases? What we are saying is that the trial court should be able to continue, but with this court's blessing, because this court ultimately makes that decision. All right, that's what they're asking for. But court, give them blessing to continue. But what we're saying is that there is a practice in place currently. And you want us to do it on a case-by-case basis? It should be. Is that what you're saying? It should be. As opposed to exercising court efficiency and entering an order or ruling that says, in these types of situations, court, you have the authority to continue to make decisions as long as it does not affect the specific issue that's on appeal. Yes, and it should be a case-by-case basis. And tell us how that's helpful. I'm sorry. I'm just going to ask, why shouldn't the trial judge be an expert in the case? Wouldn't we know nothing about these cases?  Why shouldn't they make that determination? For instance, you're asking me in this motion now to do X. I'm going to make a determination as to whether that X interferes with this issue that is subject to the order that's up on appeal. I don't understand. Trial judges do that all the time in the law division and the chancery division. Why should this be different? I'm going to point to Rainey S. This court chastised the parties for not notifying the court that the permanency goal changed during an appeal was pending. And this court specifically said... I'm sorry, what case is this? In Rainey S. Can you give me a cite? Page 41 of the upper brief. Okay. Oh, Rainey S., yes. Okay. Do you still need it? No, I got it.  In Rainey S., the case was up on appeal after a denial of the petition for termination of parental rights. And then while it was on appeal, the case, the permanency hearing was held and the permanency goal changed. And this court didn't know about this until the parent filed a motion for rehearing after this court had already issued its decision. And this court specifically wrote in the decision that this delay, I mean, this not notifying the court and holding this hearing actually caused further problems. And it actually caused a three-month delay in the resolution of the appeal. And it caused this court to have to then decide whether the issue on appeal was moot. And this was all based on a permanency order. That is a non-final order. And so even a permanency order that is non-final can have an effect on an appeal. And in Ray Raishan H., this court held it was moot to review the dispositional order because, again, the trial court held another hearing during the appeal and entered a new dispositional hearing. And this court said, well, now the issue is moot. Can't review it. But going back to Justice Mitchell's suggestion, and those are both unusual situations, but isn't the trial court in a far better position than we are to make those pretty unusual kinds of determinations? You have to understand, you file a motion in this court, you're getting a judge or a panel of judges, three judges, who know nothing about the case. Judge, we trust your decision. Either way. Yes, but what the case law says and how this court has held is that these cases should be determined on a case-by-case basis. What case has said that? What case are you citing for that? Well, in Ray Raishan H., in India B, the court was trying to, or the party was trying to say that this court should resolve the issue of competing or conflicting decisions, appellate decisions. And the court specifically said, we don't need to issue a decision because these types of cases are very fact-specific. And the decision was based on the facts of that particular case. And in our cases, juvenile cases, or child protection cases, they are decidedly too generous. But what we also have to remember is that while the adjudication disposition is on appeal, if a permanency hearing goes forward without the blessing of this court saying that there is jurisdiction to proceed, if the permanency goal gets changed from return home to anything to substitute care pending court determination on criminal rights or anything that is not return home, the statute specifically states under 2-28-2 that reunification services will end. Which puts the parents and the child, if return home was ultimately the goal before, puts the parents at a disadvantage because now they have to go seek out those services on their own. DCFS no longer has to provide those services. And visitation changes from weekly to decreased to possibly a monthly visit because the goal has changed from return home. So this permanency order, while it's non-final and can change based on the circumstances of the case every time it's up for review, it has consequences to the family because it can change the services, it can change the visitation. So we have to remember that when we're talking about whether jurisdiction should just be in the trial court while an appeal is pending. But counsel, in situations where, you know, maybe the visitation needs to be changed, it takes a great deal longer for the case to come ready for the appellate court to review the case, whereas the circuit court, you know, is able to get it on their docket within, you know, a matter of days if they want it. Isn't that in the child's best interest as opposed to waiting for us to, you know, not that we're, I'm not suggesting we're dilatory in any way, but it just takes longer for the case to get to us, for it to become ready for you guys to file your briefs, you know, let alone if there's a holiday coming up, now you want an extension and so on. And so that's, it's a disservice to the family, to the parents as well as the children. Just to add, doesn't your emergency motion illustrate that? This case, again, is very particular in its facts, but I do want to answer Justice Johnson's question here. As I want to point out, there is another case on appeal that is actually before this division in Remoria T, 24-2134. And in that case, the public defender's office actually filed a motion for a leave to release limited jurisdiction in the trial court to hold a hearing for return home of the child to the mother. Can I have the case number again, please? Yeah, it's 23-2134. Okay, thank you. And that motion, the public defender's office filed that motion on August 9th. And this court, actually, Your Honor, Justice McBuff, entered the order the same day the motion was filed and allowed the limited jurisdiction for Maria's case to continue in the trial court. What's interesting to note here is that the public defender's office did not file a motion to vest jurisdiction in this case. It filed this initial motion for unsupervised day visits in May. It filed a second motion in June to be heard in July. And in July was when the court said, no, no, no, we have no jurisdiction. And then the public defender's office, or Ms. B's attorney, filed the petition for leave to appeal on August 2nd. So you want to set precedent that these motions have to be filed first? I think it would have been a simple motion to be filed with this court. And like I said, in Maria T's case, this court granted that motion within the same day. But if that becomes the rule, do you think that, and I guess this is a little facetious, but do you think we'd still be able to enter those orders same day? If it's now a requirement, so now all of our trial protection cases, all the attorneys are on notice, we have to file a motion in order to have the circuit court obtain specific jurisdiction to hear this visitation motion. This motion to modify visitation. I didn't specifically look at all the time frames of the motion being filed and the order being entered, but in the six examples that I... But you applauded Justice McFarland for... ...in the same day. Do you think she's still going to be able to do that if that becomes the rule? I do believe this court is capable of doing that, and like I said... You're trading the 12 experts at juvenile court, those 12 expert judges, for the 24 generals who sit in the first district. But ultimately, this reviewing court decides that decision, and we don't want to run the risk that an order that gets entered in the trial court while an appeal is pending becomes null and void because it lacked jurisdiction. And it happened in one of the cases that I cited to. Specifically, this court, the trial court's order is null and void because it didn't have jurisdiction. And when that happens, it actually causes further delays in the trial court, in the child's proceedings, the child and parent's proceedings, because now we have to redo that all over again. And by that time, the circumstances will have changed again. So what we're asking is that the prudent and efficient process is really to file this motion in the appellate court. The appellate court can say... I just left, and I think we've all asked you this question a few times, but I'll try one more time. Okay. What expertise do you think we can bring to that question? As people who know nothing about the case, it's not our case, we don't know anything about the trial court, what can we add? Well, again, what we're talking about at the end of the day is jurisdiction. And this court makes that determination. So while the facts of the case are specific, and, yes, the trial court has a better understanding of the intimate facts and nuances of that particular case. As well as the dispositional and judicatory order that that court entered, so they know our order is up on appeal. Correct. But at the end of the day, this court still reviews the appeals of adjudication and dispositional order. But we haven't yet. At the time we get this motion, at the time I entered that order in 20 minutes because you happened to get me at a good time, that I could enter it quickly, which does not always happen. It just doesn't. So I didn't know anything about that case. But what we're asking for this court is about jurisdiction, not necessarily about the specific facts of the case. And, you know, the general rule, like Justice Mitchell has said, is, you know, the court is divested of jurisdiction, but that there are issues, specific issues, that are independent, collateral to, or supplemental to the proceedings. Case law is clear. You know, contempt hearings, child support enforcement, you know, there's a list of issues where the case law is clear and courts have, you know, decided this over and over again. Those issues are collateral or independent or supplemental to. We now, in the world of child protection, this becomes a little bit more murky because, like I said, permanency orders can even affect, can affect an adjudication and dispositional order. So we need to take that time. Explain that because, and I'll go back to the question that I asked the opposing counsel. The adjudication order is, there was abuse and neglect at a specific time, correct? Yes. It's the time that the complaint, the petition was filed. Yes. And disposition is, at this specific time, the parents are not yet willing and able to take this child into their home. Correct. Two specific points in time. Yes. That's what's up on appeal. Yes, but section 2-23-1A of the Juvenile Court Act specifically states that if the parents, if the parent is found to have abused the child and those findings is part of the trial court's order, it's finding of abuse, the trial court cannot return a child home without holding a best interest hearing. Right. To determine the child's best interest and to determine the parent's fitness to care for the child. At the time that the parents are seeking return home with the child. Correct. At this time. Which is, if the return home is allowed, that affects the dispositional order that is on appeal. But it doesn't really affect the adjudication order in any way. That finding that these parents abused or neglected their children is still a finding and the parents still probably want it reversed on appeal. And it's still in the DCFS records and it's still an indicated finding. All those things remain even if the child's returned home. But what is found at adjudication affects what services are made and what services should be recommended based on what the findings are. And then the dispositional hearing, you know, they take into consideration what the adjudication findings were. Of course. So, you know, one of the types of orders that the trial court can enter is specifically, you know, that certain services are appropriate or inappropriate based on what has happened in this case. And by the time we get to a motion for reunification, we're asking the court to modify that original dispositional order. Which means that if that order is on appeal, the adjudication order and the dispositional order is on appeal, it affects the appeal. And if the court did not have jurisdiction to enter the modified dispositional order, it is null and void. There is an interdependence between what is on appeal, the adjudication and disposition, and what VisB here is seeking later on in terms of, you know, visitation or permanency hearing. Again, you know, permanency hearing. If a goal gets changed, it affects the services and it affects the visits. I think if you want to give the State any time, you need to do that. Unless there's questions. In closing, Ms. B's appeal is regarding the visitation and reunification, because reunification was never an issue in the case. And the public interest exception does not apply because the three criteria were not met. But should this court put aside the mootness issue, the statutory language of the trial court. Which criteria was not met, counsel? The three criteria of that it needs to be of sufficient breadth and has a significant effect on the public as a whole, whether it's likely to recur, and whether there needs to be future authoritative guidance. So you're saying they didn't meet any of them? Well, with regards to visitation and reunification. Visitation because the trial court has already granted the relief. Reunification because there was no motion that was ever filed. But should this court, you know, put aside mootness, then we ask that this court find the statutory language of the Juvenile Court Act and the Illinois Supreme Court rules do not provide continuing jurisdiction for the trial court while a case is pending on appeal of the adjudication dispo order. And that the prudent and efficient process is to file a motion to vest limited jurisdiction in the trial court. And then this court can also put in the order that this issue is independent of, collateral to, or supplemental to, and then the trial court can have the jurisdiction. Thank you. Good afternoon. Assistant State's Attorney Gina DeVito on behalf of the people. I realize I only have two minutes. The issue that is different for us is the language of the word remand and revest. When you're talking about this order. That is because Illinois Supreme Court Rule 366A5 is a rule that is already established. This is not a new rule. This rule allows for this appellate court to make any order and grant relief, including remandment, back to the circuit court. The language used by this court to send the case back to the circuit court for limited purposes should use the word remand and not revest because that is what the Supreme Court rules allow. This allows the parties then to move forward modifications to an order while maintaining the transfer of jurisdiction to the appellate court. This is because the circuit court's jurisdiction is conferred only by the Illinois State Constitution from Section 9, Article 6, that specifically states that the circuit court's subject matter jurisdiction is conferred entirely by the Illinois State Constitution. Your position is that the appellate court has no power to revest. Correct. You have a right about that. Correct. And Justice Mitchell, you specifically said in your civil proceedings you were able to handle certain things. And that is true because the Constitution. Because the jurisdiction is there in the first instance. Well, and the Constitution specifically says there are exceptions for review for administrative action that are not affecting the dispositional order of the appeal.   I'm sorry. That was all very exciting. So the state is asking that you use the word revest. I'm not as convinced. I'm not convinced. I'm confused why it matters. I haven't thought about the difference between remand and revest, so thank you for bringing it to our attention. But when we remand generally, we're done. When we remand, we're done. Correct. You're saying we should remand even though we're not done. Correct. And our position is because the rule already exists in this Supreme Court rule of 366A5 that specifically gives you the authority to remand something for a limited purpose, which is what you did here, Justice McFaul. You just used the word revest, which, frankly, I mean, we didn't look at the —   So we didn't look at the Illinois Supreme Court rule of 366A5. Is this in your brief? Yes, it is. Okay. And unfortunately, I apologize because it was not cited, but it is there. So I apologize. Okay. So you also agree with the public guardian that we have to do one of those things that the trial courts lose jurisdiction to decide permanency orders, new disposition orders, visiting orders. Yes. Anything. We adopt the public guardian's argument in full except for this use of the language. We believe that it would cause jurisdictional confusion to use the word revest, and we would ask that the language used is limited remand. You don't think it causes jurisdictional confusion, the fact that half the trial judges are deciding these motions and the other half are not? Well, I think that, you know, again, we're arguing that this case is moot. But if you decide to clarify what the rule already is, as Justice Johnson was stating, that, like, are we supposed to become — make up a new rule? The rule exists already, Justice Johnson. It is here. Jurisdiction is not existing. Once that notice of appeal is filed in the circuit court, it is gone. And so the only way for us to deal with this continuing dispositional order issue is for you, the appellate court, simply to remand for a limited purpose. Can you address the — why the exceptions don't apply? For the mootness doctrine? Yes. We would adopt the public guardian's argument that it's already an existing rule, essentially, so we don't feel that it needs further addressing. If there are no further questions, we would ask that you dismiss the appeal as moot, and if not, that the circuit court did not retain jurisdiction when the motion was filed. Thank you.  Thank you. Oh, you get a rebuttal.  Go ahead. Thank you. I just wanted to note that the State did argue that the rule is already there, that there is no jurisdiction. We've cited numerous cases showing that there is continuing jurisdiction. I would also point out that the two cases that were referenced by the public guardian, In re Raney and In re Raishan, also dealt with later orders that were entered, and the appellate court never said that the trial court was without jurisdiction to enter those orders. Do you have a position on the verbiage remand versus revested? Do you care? I don't care because, like I said, the motions to revest are not a real solution. The trial courts have jurisdiction to enter the orders. They're in a better place to hear these motions, and I know the public guardian notes that there could be the situation where a permanency goal is going to be changed in the trial court. Well, the trial court is in a much better position to determine, okay, I know the parents aren't doing that many services, but I also know this appeal is pending. So maybe I'm going to wait to change the goal, and we're going to come back in two months instead of six months, and the trial court can make that determination. If the trial courts, they're the fact finder, they can make cautious decisions, but they're in a better place to do that, not the appellate court. Can you address, again, the, I guess, lack of consistency amongst the 12 judges that are there? So why shouldn't we then, I guess, oversee, I think is essentially what we'd be doing, these types of cases on a case-by-case basis? Well, I mean, the lack of consistency is not only among the judges in the trial courts, also the parties. I would note that even the public guardian in this case in the trial court said, yes, judge, you have jurisdiction to hear this motion, and then on appeal, they're saying, no, the judge didn't have jurisdiction. Everybody needs this rule clarified in case law. That is the appropriate response, and I think that, I think the trial courts probably want this jurisdiction. They just don't know, because there is no clear child protection case that talks about this. I have no idea why everybody seems to be so confused. It seems quite clear that jurisdiction is continuing. There are some cases, the public guardian actually cites them on the issue of mootness. There are some older cases from the 80s that seem to say pretty clearly that the trial courts have jurisdiction throughout the appeal. Do you understand the cases I'm talking about? There's two cases. The Johnson case, Justice? Yes. Yes, and I will say that those cases did come before the rewriting of the Juvenile Court Act of 1987, and those cases were before that. I see. So this is maybe why they're not being followed? Right. So we need some clear precedent to show these trial courts, yes, you do have continuing jurisdiction, and you have a responsibility to continue hearing these cases. But if there are any other questions, I'm happy to answer. Can you address her point that, you know, the statute is clear, and so we're not in a position to, you know, rewrite, to add, you know, or add words, you know, for our purposes or for interpretation into the statute? The statute regarding the Juvenile Court Act timelines? Not with respect to jurisdiction during appeal. Well, I would say that because the Juvenile Court Act doesn't contain a provision relieving the court of its responsibilities under the act, the jurisdiction is continuing. And I would just point to the Tequila case that showed that, yes, jurisdiction was continuing, and an adoption was finalized while an appeal of termination of criminal rights was pending. And because that was able to happen and that nightmare situation occurred that was such a great injustice, a Supreme Court rule came out to prevent that from happening. And we don't have any Supreme Court rule saying trial courts are relieved of their responsibilities under the JCA just because an appeal is pending of adjudication or disposition. So although it's not explicit in the act that jurisdiction is continuing while an appeal is pending, there is nothing to say that the court is relieved of its responsibilities under the act because an appeal is pending. Any other questions? Thank you. Thank you all. This was very well briefed and argued, and we will take this matter under advisement. Hold on.